INHABITANTS OF GLENBURN *vs.* INHABITANTS OF NAPLES.

Penobscot. Opinion January 10, 1879.

*Pauper. Insane Persons. Statutes, construction of. Husband and Wife.*

By R. S. of 1857, c. 143, § 20, any town chargeable in the first instance and paying for the commitment and support of the insane in the hospital, may recover the amount paid of the town where his legal settlement is, as if incurred for the ordinary expenses of any pauper. By the same section, "no insane person shall suffer the disabilities incident to pauperism, nor be hereafter deemed a pauper by reason of such support." *Held*, that "such support" of the wife will not interrupt the five years residence of the husband in any town, so as to prevent his gaining a settlement under R. S., c. 24, § 1, Rule 6. *Held*, also, that as the husband in this case had resided more than five successive years in the plaintiff town, without receiving pauper supplies, before the support sued for had accrued, the action was not maintainable.

In order to interrupt a residence, it is not sufficient for a person in need of relief to make application for aid to the overseers of the poor where he is residing; the aid must be furnished as pauper supplies.

The act of 1870, c. 127, provides that, the time during which the insane person is supported in the hospital shall not be included in the period of residence necessary to change his settlement. *Held*, that the act having been passed after the settlement acquired in the plaintiff town can have no effect in this case.

ON REPORT.

ASSUMPSIT for pauper supplies.

*W. H. McCrillis*, for the plaintiffs.

*M. M. Butler & C. F. Libby*, for the defendants.

DANFORTH, J. An action to recover the amount paid to the Insane Hospital for the commitment and support of Clarissa Pendexter from October 16, 1871, to May 31, 1873. It is conceded that if the said Clarissa had her legal settlement in the defendant town at the former date, the plaintiffs are entitled to recover; otherwise not.

The alleged pauper has since 1847 been the wife of Oliver Pendexter, whose settlement was in Naples previous and up to April 29, 1859, when he with his wife removed to Glenburn where he has resided up to the present time without receiving any supplies as a

pauper, unless a payment by Naples for a previous support of the wife at the hospital shall be deemed such.

In October, 1862, the wife became insane, " and in consequence of said insanity, the said Oliver fell into distress and stood in need of immediate relief and applied to the town for aid." The selectmen of Glenburn, on due proceedings had, immediately sent the wife to the insane hospital, where she remained until her discharge July 10, 1869. During this period Naples, upon notice from Glenburn, paid for her support, except what was paid by the state, and neither the wife nor husband received any other supplies from either town.

The sole question presented is whether the support thus rendered to the wife was such as would interrupt the husband's residence in Glenburn, so as to prevent his acquiring a settlement there.

The mere fact that he fell into distress and made application to the town for aid would not be sufficient; aid must be actually rendered ; there must be supplies received as a pauper. R. S., c. 24, § 1, Rule 6, the rule being the same under the revision of 1857 and 1871. *Hampden* v. *Bangor*, 68 Maine, 368.

Was the support thus rendered received as pauper supplies ? The R. S. of 1857 answers this question in the negative. By c. 143, § 20, after providing in certain cases for the recovery of the expenses of a support in the hospital, of the town where the patient has his legal settlement, as if incurred for the ordinary expenses of any pauper, it is enacted that, " No insane person shall suffer any of the disabilities of pauperism, nor be hereafter deemed a pauper by reason of such support." Such support clearly refers to that provided for in the preceding part of the section, to be recovered of the town wherein the insane person has his legal settlement, and the provision is as distinct as language can make it, that such support so rendered shall not make a pauper of the person receiving it; or, in other words, it is not to be deemed supplies received as a pauper. Such appears to be the construction incidentally given to the statute in *Jay* v. *Carthage*, and *Pittsfield* v. *Detroit*, 53 Maine, 128, 442.

It is clear that the wife could not be made a pauper by such

support, and if she was not, her husband could not be through her, and his residence in Glenburn could not thereby be interrupted.

The argument of counsel seems to have assumed that, during the stay of the insane person in the hospital his residence is suspended. As the statute now reads there would be no doubt as to such suspension, and quite probably the court might come to the conclusion that the assistance rendered by Naples after the discharge would not come within the provisions of the statute. But this amendment was not made until 1870. For the first time the statutes of that year, c. 127, provides that, " the time during which the insane person is so supported shall not be included in the period necessary to change his settlement." But long before this act took effect the necessary five years had passed; it was therefore too late to affect this case. The husband's settlement had become fixed under existing laws, and if the legislature could by a subsequent act change it, or any of the grounds upon which it was acquired, there is no evidence in the terms of this act that it was intended to have a retroactive effect ; and without such it must be considered as applicable to the future only.

Besides, it is not applicable to this case. It is the residence of the husband that settles it, and not that of the wife. His residence fixes his settlement and hers follows that. True, the presumption in ordinary cases is that the home of the wife is that of her husband. But this presumption ceases to operate where she has no home, as in this case, and we must look to that which he has made for himself to find where his residence is.

It is, however, contended that although such support as was furnished the wife does not by law affect her or her husband's rights, or reduce them to pauperism, yet as between the towns it has the same effect as pauper supplies, and as between them prevents à change in the husband's settlement. But it is difficult to see how it can affect the towns without affecting the person. The settlement is an incident to the person as much as to the town, and if it is unchanged as to the one it is so as to the other. But a more conclusive answer to this is found in the statute fixing settlements. R. S., c. 24, § 1, Rule 6, (and it is the same in the

revisions of 1857 and 1871) provides that, " a person of age, having his home in a town five successive years without receiving, directly or indirectly, supplies as a pauper, has a settlement therein." To interrupt the residence, then, the supplies must be received as a pauper ; they must reduce the person so receiving to the condition of a pauper, subject to the disabilities incident to pauperism ; while by the express provision of another statute, as we have seen, no such effect shall be attached to an insane person in consequence of a support in the hospital, under any circumstances.

There is no occasion for discussing the liability of Naples for the support of the wife during the time of her first stay there. If it attached in consequence of her settlement in that town at the time of her commitment, it would cease at her discharge. If it continued only so long as her settlement continued, then Naples has paid more than the law required ; and in either event, though under certain circumstances of doubt as to settlement, these acts of the town might be used as testimony, they cannot avail to change the settlement. And in this case, where there is no dispute as to the material facts, these acts are useless for any purpose whatever.

As the action is not maintainable, by the somewhat peculiar provisions of the report, it is to stand for trial.

APPLETON, C. J., WALTON, BARROWS, PETERS and LIBBEY, JJ., concurred.